Good morning everyone and welcome to the Ninth Circuit. We will hear the cases in the order on the day sheet. The first two cases are submitted on the briefs. Those are United States v. Joseph Kuzmin is submitted and United States v. Alonzo Jenkins is submitted. And the first case for oral argument is United States v. Kaleb Basey. Counsel? Thank you Your Honor. Brett Max Kauffman for the ACLU. We'd like to reserve two minutes on this side for reply if that's okay. Please watch the clock. We will. Thank you Your Honor. I want to begin by emphasizing that the use of 2703 F letters is an issue that goes far beyond this single criminal case. According to public transparency reports issued by the major providers Facebook, Google, and Yahoo alone, last year the government issued about 150,000 of these letters, affecting the contents of 250,000 accounts just last year. And in far less of these cases are the government ever coming back with any legal process. It seems to me we've got a procedural issue that we first have to overcome before we even reach this issue. And that is the question of whether the district court abused its discretion in denying further continuances. If we decide there is no abuse of discretion, we wouldn't reach this issue, would we? That's correct, Your Honor. And I think for efficiency's sake I think Mr. Butler will address those issues and I'm going to just address the merits of the Fourth Amendment issue. And for the purposes of his argument you can assume it's violated and discuss those issues. So both the Supreme Court and this Court have made clear that in order for the government to seize property without a warrant, four factors must be met. First, it needs probable cause to do so. Second, there must be a case-specific exigency requiring immediate police action. Third, the seizure must be temporary and proportional to the nature of the exigency. And fourth, the government must be making reasonable efforts to obtain a warrant. With regard to the seizure, though, as I understand these letters, it freezes, so to speak, the information that's in the account, but that the vendor, the internet service provider, actually makes, I guess, an electronic copy of the content of the account and then just holds on to it at that point. That's right. That is... So how has the government seized anything if it's still in the possession of the service provider? Well, that's because when the government issues one of these demands, it turns Yahoo! into a government agent. And under this circuit's law, which follows the Miller test for agency, the court asked two questions about whether a private person might become a government agent for Fourth Amendment purposes. Number one, they asked whether law enforcement knew of or acquiesced in the private activity. And second, they asked whether the purported agent intended to assist law enforcement. And this Court has explained that that factor means, in other words, whether the agent had an independent private motive. Go ahead. Just as a threshold matter, the District Court didn't make any findings on this. It just said there wasn't good cause for a continuance. And I didn't read the briefs as making a facial challenge to 2703. I thought the challenge was whether the statutory claim that was unconstitutional on its face. Am I wrong there? No, I think that's right. I think that the court is facing that particular question here. Was the seizure pursuant to a preservation letter for nine months unreasonable under the court? We don't know what Yahoo! actually did because the District Court didn't make any findings. We don't know if it changed its practices. We don't know if it always keeps everything everywhere the way Google does. So we just don't know any of the facts. I mean, even if we agreed that this issue was before us, wouldn't we have to send it back? Well, I think the court could reach the Fourth Amendment question in order, and for judicial efficiency's sake, it might make sense to do so. Because sending it back and leaving that question open, having a whole fact-finding, having the court rule on the Fourth Amendment question, I think it's properly before you here if you do find that there are factual issues that might be required to be sent back down to discuss suppression. I think that would be appropriate. How do we know that Yahoo! did anything different than what it would normally do? Because if it did nothing, it got the letter and it said, well, we don't have to do anything because we always preserve everything. No seizure, right? There may be a factual question there, but I don't think even the government disputes that what happens in these kind of circumstances is Yahoo! makes a copy of the data and puts it off to the side and waits for law enforcement to come back. To your point about whether this is what they do all the time, I just think that's factually wrong. The case the government points to... Is that in the record? Sorry? I guess my question is, what's in the record before us now? In terms of what Yahoo! did? Exactly. Well, I really don't think... I don't know in the record if there's actually, because there was no suppression hearing, any evidence about Yahoo!'s particular activity in this case, but I think the government shares similar assumptions as the ACLU and as Mr. Vasey's lawyer, that they are making a copy. And they point to this Hatley case from the Fourth Circuit to say that copying is part of this kind of service. Counsel, let me interrupt you. I'm trying to draw a distinction between the receipt of a subpoena, Ducis-Tecum, served on a bank for an account holder's bank records. How is that different from what Yahoo! did here in response to the 2703 letter? Well, I think two things, Your Honor. One, they are using legal process, a subpoena, and second, in that kind of case, a bank records case, we're talking about records in which there is no reasonable expectation of privacy, and I think... But doesn't Yahoo! warn, and I'm not even sure this is in the record, doesn't Yahoo! warn its account holders that they may turn over the content of the accounts to a government agency? Well, not only that, just to add to that question, it seems to me that under the terms of service for the Yahoo! account, it says, Yahoo! may access, preserve, or disclose your account information and content if required to do so by law, or in good faith belief that such access, preservation, or disclosure is reasonably necessary to comply with legal process. That's right in the record. Yeah, I understand that's... And that would be, if not, what Judge Tolman's talking about. Why isn't that a consent given U.S. v. Atkinson? I think that there's a few reasons, Your Honor, if you'll let me answer. I would answer his question first, because I kind of cut in, but I'm trying to say it seems to me that, I mean, I was waiting for this question. So was I, Your Honor. I got all these other questions, but they were asking them plenty good. Now it comes to consent, and I'm saying to myself, ooh. Well, first of all, as to the terms of service, I think we don't need to look further than the Byrd case from the Supreme Court last year. That was a case involving a rental car contract. Somebody violated the terms of that contract, and the question was, did the individual who wasn't allowed to be driving the car, who violated the terms of service in the rental agreement, have a reasonable expectation of privacy in the vehicle? And the court said yes. And we have other cases. I mean, Warshack, going back to Warshack, there was no question there was third-party access, the ability to access the content in that case. The court explained that there was still a reasonable expectation of privacy. But just a minute. I can understand those cases, and I've read them, but it doesn't – it seems to me that the good-faith exception to the exclusionary rule at least applies here. Look at Illinois v. Krull. Well, I think – I'd rather have Mr. Butler answer that question, but just to the good-faith question generally. Every time I get to a question, I want to ask. You want him to answer it. Well, just to offer some response to that, I think that, you know, the statute itself says 90 days. In this case, the government spent nine months without coming back. We don't know whether Yahoo produced the material that it – that was applicable within the 90-day period. The 90-day period was long gone. So again, the record is silent as to whether Yahoo produced that material or just different material based on the – when the request, the subpoena actually came. Yes, Your Honor. I think that is an important factual question that's open here. I would point out that it probably would be the government's burden to prove that there was an inevitable discovery because the material would never have been, you know, missed, whichever copy was actually turned over. Let me finish the question I was getting. Sure. And that is, in my hypothetical with regard to the subpoena ducis tecum, would your position be that the bank has been turned into a government agent upon receipt of the subpoena requiring account holder information? I think they are, yeah. I think that there's really no trouble. What case could you point me to that confirms that? Well, one you could look to very close to this context is the Microsoft case from the Second Circuit a few years ago. That's a case where it was – there was very little question. Regardless of who actually was obtaining and seizing emails in that case, the court was very clear in explaining that that was a government act, even though Microsoft went outside – Government act, but does that convert the third-party custodian into a government agent? That's what you're urging us to conclude. I think that is effectively what happens here, yes. I think anytime someone – How is it different? That's what I'm struggling with. I don't understand the distinction between a bank that is the account holder which receives legal process pursuant to a grand jury subpoena for the content of the record versus an internet service provider who receives a 2703 letter pursuant to a statutory authorization for account holder information. I think I understand your question, Your Honor. I think for agency purposes, I would say they are – the answer is identical. The thing I think you're getting at is more the seizure or Fourth Amendment event type question. Yeah, I don't see a seizure. That's the problem I'm having with your argument. Well, in a subpoena context, it might be a search. But I think that's a separate question than whether you consider the person retrieving the records as a government agent. I know time is running out here, and I want to make sure Mr. Butler gets to get up. So thank you, Your Honors. Good morning. Good morning, Mr. Butler. Yes, sir. All the tough questions he said you're going to answer, so get ready, buddy. I'll attempt to. Which question did he preserve for me? He reserved the motion to continue. Okay. Yes. So Caleb Basie, of course, had different counsel, and when different counsel looks at a file, it's almost like the court making a de novo review of a record that has come before it and maybe finding something that needs their attention. So in this case, we had identified – But there's no question this motion was filed after the deadline, correct? Yes, that's correct, Judge. And there were two full rounds of motions practiced involving different defense counsel pre-trial, were there not? There was, Your Honor. Now he's asking for a third round of pre-trial motions. He was asking for a third round, and requesting that third round of motions in what the government concedes was a complex case. I submit that it was abuse of discretion not to give the additional time necessary because – Did you ever suggest in your opening brief that the court abused its discretion? I looked for it and couldn't find it. If you didn't find it, Your Honor, it must not have been there. Maybe I just got a bad eye. There were bad law clerks who couldn't confirm it either. But I'm just trying to say it didn't seem to me you even argued the court abused its discretion. And my worry about this is that this was untimely. The district court said, I think the unresolved issues have been outlined. And what he's really saying is, why should I allow this to happen on the eve of trial? And nobody told him what to do. And now you want me to say, okay, Judge, you abused your discretion when nobody even told you what they were going to do. Well, I believe, Your Honor, that we had given notice as to what motions we needed to file. Well, that was a long time before. And then we had two rounds, and this was on the eve of trial and after the deadline. And here we are coming with another motion, and the court says, okay, outline the unresolved issues, saying, tell me why I should do this. Nobody said anything. Nobody explained it to him. And yet it's supposed to be an abuse of discretion for the trial judge not to do something? Now, you have to understand, I have a personal stake here. I was a trial judge. I didn't like the Ninth Circuit involved in my stuff when I didn't even get a chance to do anything. Now you're going to tell me why I was wrong. Well, under these circumstances, Judge, again, it was a complex case, and I have to watch this clock. Complex? But you ought to tell the judge that. You ought to tell the judge what you're thinking so that I would be able to do something about it. But the court had already made a finding of the complexity of the case, Judge, and that's why a number of those previous continuances was had. We are under a minute. If I may reserve some time, please. Yes. If you want to sit down, you're welcome to answer your questions. You can sit down. No, that's up to the judge. You can reserve the rest of your time. I hope I answered those reserved questions. Thank you. I'll hear from the government. May it please the court, I'm Nathan Judish on behalf of the United States. In fact, the district court did not abuse its discretion when it denied Mr. Basie's motion to continue the trial. As it is acknowledged, the motion came nine months after the motion's deadline, and he made no attempt to set forth any good cause for seeking a further continuance and for having missed the deadline. As I read the briefs, the appellant's argument was that the court did, in fact, pass on the merits in saying that, and all appear to be without merit on their face. Why doesn't that? Obviously, the district court didn't make any factual findings or address the underlying issues, but why is that not a merits ruling? Because the district court, the only actual ruling it did was denying the motion for continuance. All it did is mention something about the merits in the course of doing that. And so the notion behind this court granting de novo review when the district court rules on the merits is, as the court said in the Vasquez case, that when a court rules on the merits of an untimely suppression motion, it implicitly concludes that there is adequate cause to grant relief. Now, I submit that when you look at what the district court did here, which was really quite disparaging, it wasn't saying that there was good cause for the late motion. Instead, the district court says that pre-trial motions now appears to be motivated primarily for delay. This is not a ruling on the merits. There are no findings of fact, no conclusions of law. I would note there's a case that I think is relevant to this that the government cites in its opening brief. It's the Teckle case, in which a district court had denied an untimely motion to suppress for being untimely.  the court had considered the merits of the motion in order to determine that there was not, in fact, good cause for the delay. Basically, there was a dispute over whether the law had changed. And the court takes a look at the merits, says the law hasn't changed, there's no good cause. But the point is, from Teckle, is that merely commenting on the merits is not the same as a ruling on the merits. I sat on the criminal rules committee when we amended Rule 12, and this is sort of the poster child case for what we were trying to do in giving trial judges the ability to set firm deadlines. Would you agree that it's difficult for a trial judge to make a determination of good cause without at least inquiring of the defendant what new motions do you propose to file and what explanation can you give me that establishes good cause for failing to meet my two prior deadlines? The district court here did give Basie an opportunity to present his motions, so he filed his proposed motions, and the court looked at them and then chose... or, you know, thought that they were... for purposes of delay and without merit, and so... But there's no... I guess my question to you is, is there any way for the trial judge to do that without at least making a facial examination of what motions the defendant says he needs to file and what good cause he has for not filing them earlier? I think... I mean, when it's clear that the defendant is well past the motion's deadline, the rule is quite clear that the judge can allow the motion to proceed if there's good cause. I would think, in that circumstance, the burden ought to be on the proponent of the untimely motion to explain why there's good cause, and here there was never any attempt to do so. You will not find anything in the record. But would you agree that that analysis is not a merits determination of the underlying motion? It is an examination of the explanation for what the motion is and why there is good cause to hear it late, past the deadline. Do you understand my question? I'm not entirely sure, Your Honor. All right. How does a trial judge make a determination of good cause in failing to meet a deadline previously set for filing of pretrial motions without making some sort of an inquiry of the defendant who's asking for an exception, which requires showing good cause, to raise this late motion? I think it should be... the burden should be on the defendant to come forth with good cause when he seeks to do a late motion, and here the defendant did not do so. But is that a merits determination on the substantive worth of the motion? I don't think that is a merits determination on the substantive worth of the motion. I don't think the district court reached the merits of the proposed suppression motions for Yahoo. And am I correct in understanding the record that the defendant had been on ample notice that there had been a 2703 request for this information months before, and so for whatever reason, his counsel chose not to make a legal issue out of that fact until way too late in the pretrial? That's correct, Your Honor. The, um... As it's in Basie's opening brief, he was aware that there had been a preservation letter at the time of the initial suppression hearing, and I think that would have been the summer of 2015. Then the government files a superseding indictment in March of 2016, and at that point, he's aware that the evidence from the Yahoo account is going to be a critical issue of the new charges against him. A month after that, the district court resolved the initial round of suppression motions. Then Mr. Basie changed counsel, and then it wasn't until October, which is six months after the superseding indictment, that he filed a new second round suppression motion. So counsel was fully aware at that point of both the preservation request and the importance of the issue from the Yahoo email account and failed to move to suppress and didn't even raise the issue until nine months later. So if I find, or if we find, that the district court abused its discretion in denying the motion to continue, have we got enough here to determine this motion? If you decide the district court abused its discretion, you can, I think, still resolve this case by ruling in favor of the government that even on the facts, as, you know, sort of most favorable to Mr. Basie, the government would still win because, for numerous reasons that we can go into, the fact that there's no seizure, the fact that Mr. Basie consented. But I do think on this record it would be impossible to actually do what Mr. Basie is asking this court to do in order to get the Yahoo records suppressed, because we really don't have facts about what happened here beyond the government saying to Yahoo, please preserve the contents of the account for 90 days. Opposing counsel suggests that the government agrees that Yahoo, upon receiving this request, made a copy of the emails and kept separately a copy of all the emails that fell within that 90-day period. Does the government agree with that? I would say that is their typical practice. I really think if there's a motion to suppress in a case like this, we actually need to have, you know, make findings of fact in order to really be sure. It would be the normal practice of Yahoo to do that. It would not be, I think, I don't want to... I'm not sure of Yahoo, but I'm certainly aware providers sometimes have failed to do what they're supposed to do when we send them preservation letters. It's unlikely, but really we should know what... we should have facts before we decide an issue like this. And, you know, what happened beyond the 90 days, whether Yahoo retained those records at all, we have no idea. Whether, you know, Mr. Basie doesn't allege that he tried to delete information within the account. If he didn't try to delete his email, it would still have been sitting there when the government obtained the warrant. Sometimes it happens that the government asks a provider to preserve records and the provider does and sets them aside. And when the government obtains a warrant, the provider forgets all about the preserved copy and just looks at what's in the account. So really, I think, findings of fact are critical to actually make a finding... would be critical to make any kind of finding that a defendant's rights have been violated. But there is a sufficient basis, I think, to conclude that a preservation fact letter does not violate the Fourth Amendment. There's... it's just not a seizure. It's not a meaningful interference with possessory interest. Preservation requests are really relatively common in the law, you know. Every year, if I file my taxes and make charitable deductions, I'm required to maintain for a number of years records of that kind of information. We have... banks are required to maintain records for long periods of time. Litigation holds for, you know, just anyone who is... has notice of a claim against them or a threat of a claim against them. They're required to retain information. None of this amounts to a seizure. It's not a significant enough interference with property rights. I think the... we have the Supreme Court's decision, California Bankers Association, which illustrates this. It was looking at law and regulations which require the banks to maintain the various records for a period of six years. And I think there's no question that banks have a Fourth Amendment interest in their own records. They're the bank's, you know, the Fourth Amendment protects papers, and they're the bank's papers. And Congress says, preserve these things for six years. And the Supreme Court looks at this and says, this does not violate the bank's Fourth Amendment rights. So I think it's a... preservation is just not sufficient  It's not a... it's not a search or a seizure. And if it were, then consent here would make it permissible. The Yahoo! Terms of Service said that Yahoo! may access, preserve, and disclose your account information if required to do so by law. I mean, that's explicitly what they're doing. They're preserving the information when they're required to do so pursuant to Section 2703F of the Stored Communications Act. And what typically happens is the 2703 preservation request usually followed up with some sort of legal process when the government actually wants the information. Yes, a preservation request does not generate any information at all being disclosed to the government, nor does it interfere with the account owner's access to the account. The government doesn't get anything unless it comes and gets appropriate legal process later on. I mean, I guess there may be particularly unusual, you know, like exigent circumstances or something like that where you could have a disclosure of that legal process. Section 2702 of the Stored Communications Act governs that. But that's unlikely in a case where you're doing preservation. So the government typically does something like it did here, which is it later obtains a search warrant or whatever other legal process is required to get the targeted information. I also think here that it would be entirely appropriate to resolve this issue on the merits based on the good faith exception. This is a circumstance in which the government did exactly what the statute contemplates it's doing. It sent a single request to Yahoo to preserve information for 90 days. Congress looked at this issue, understood the importance of preserving electronic evidence which is so easily deleted and lost forever, and the importance of this information in criminal investigations, and it set forth a manageable procedure which the government and service providers can both understand and take advantage of, where the government is allowed to ask the provider to preserve this stuff for a limited period of time and then after that the provider is free to do whatever it wants to do with the information. And so here, that's exactly what the government did, and given that there's never been any court which has found that this violates the 4th Amendment, it would be entirely appropriate to say under Illinois v. Kroll that there's no suppression here because the government relied in good faith on this statutory procedure. What about the 6th Amendment right to the speedy trial? Are we really bearing down on the reason for the delay? I think the critical factor here is the reason for delay. I mean, if we go to the assertion of the right, he didn't ask until August of 2017, correct? He didn't, well, he never, I mean, he didn't assert the right in any attempt to ever get a speedy trial. It was only after the district court said, once the district court said no more delays, we're setting a trial date, this is it. At that point, when he can't delay any further, then he filed the motion to dismiss. We're really focusing on the reason for the delay. Because there's no question there's prejudice. I mean, being in detention three years is pretty much prejudice, right? Yes, Your Honor, but there's always that kind of prejudice. I think it's important to note that he was not actually prejudiced. But not always three years. Well, it's a long period. Though I would say that it's only 20... The first one, the length of the delay, that's just up to... in the air. So we're really looking at second consideration, right? Well, second consideration is the most important. Here, the district court finding that the delay was due to both his serial approach to pretrial motions and his change of counsel is not clearly erroneous. And so... And also that he either sought or agreed to a long series of continuances. And so the district court properly found that delay is attributable to Basie. I would say, on the prejudice factor, I think it is important that this didn't in any way impair... There were no missing witnesses or anything like that. No lost memories. The trial here was on electronic evidence. And so the period of time that elapsed would not have in any way impaired his ability to put on a substantive defense. Your Honor, the government asks that the judgment of the district court be affirmed. Thank you. Thank you for your argument. I have a minute for rebuttal. Thank you, Your Honor. Just a couple quick points. First, if the agency test is met, the court should be treating the provider's action as if it was the government doing it. And once you do that, I think it's clear that there was an interference in a Fourth Amendment interest here. Even going back to Katz, which said that the court had held that the Fourth Amendment governs not only the seizure of tangible items, but extends as well to the recording of oral statements overheard without any technical trespass under property law. That's from Katz. And so I think here, there's no question that if the government copied this information, which I think is the way... It requires a reasonable expectation of privacy, does it not? In the face of the question Judge Smith asked with regard to the service agreement, it warns the account holder that the information may well be disclosed to the government in certain circumstances. That's true, Your Honor, but I think it's... How does the account holder have a reasonable expectation of privacy? Sorry, Your Honor. I think it's reasonably... I think it's foreclosed by precedent. Byrd says that, Warshak, and Carpenter that was an issue, and Kwan, the that they didn't have a reasonable expectation of privacy in using those devices for personal messages, and the court still assumed they had a reasonable expectation of privacy. So the government also mentions the tax cases, the bank cases. I think that those are explained either one of two ways. One, either there's no Fourth Amendment event because there's no reasonable expectation of privacy in the material, or second, they are Fourth Amendment events. They're simply reasonable seizures in that way. We're over time now. Sorry, Your Honor. Thank you very much. Thank you. We thank both sides for their argument in the case of United States v. Basie is submitted.
judges: Tallman, Ikuta, N.R. Smith